

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 14, 1951.

Hon. Ramie H. Griffin
Criminal District Attorney
Jefferson County
Beaumont, Texas            Opinion No. V-1191

                          Re: Legality of fishing with
                              seines or nets within
                              one mile of the jetty
Dear Sir:                     at Sabine Pass, Texas.

        Your recent request for an opinion asks whether
Article 941, V.P.C., prohibiting the use of certain large
seines, nets, and other devices for catching fish in or
on Sabine Pass or the waters within one mile thereof,
applies to the waters within one mile from any point on
the Sabine Jetty. Your question arises from the fact
that application of Article 941 to the jetties at San
Luis Pass, commonly known as Galveston Pass, has been
questioned, and, the conditions there being similar to
those at Sabine Pass, you desire a clarification as to
application of the statutes.

        Specifically you ask two questions, which are:

        (1) Does House Bill 952, Special Laws, 46th
Leg., R.S. 1939, ch. 84, p. 839, modify Article 941,
V.P.C., and govern the situation at Sabine Pass?

        (2) If not, is the prohibited area under Ar-
ticle 941, V.P.C., to be measured from any point on
Sabine Jetty?

        Each question depends on certain factual mat-
ter which has been furnished by you and by personnel of
the Game, Fish and Oyster Commission, the correctness
of which we shall assume for purposes of this opinion.

        Article 941, V.P.C., provides:

Hon. Ramie H. Griffin, Page 2, (V-1191)

"It shall be unlawful for any person to place, set, use or drag any seine, net or other device for catching fish and shrimp other than the ordinary pole and line, casting rod and reel, artificial bait, trot line, set line, or cast net or minnow seine of not more than twenty feet in length for catching bait, or have in his possession any seine, net or trawl without a permit issued by the Game, Fish and Oyster Commissioners /now Commission/ or by his authorized deputy . . . within or on the waters of . . . Sabine Pass, leading from Sabine Lake to the Gulf of Mexico; San Luis Pass, leading from Galveston West Bay to the Gulf of Mexico; . . . or in or on the waters within one mile of the passes herein mentioned, connecting the bays and tidal waters of this State with the Gulf of Mexico or in or on or within a mile of any other such passes, or within the waters of any pass, stream or canal leading from one body of Texas bay or coastal waters into another body of such waters; . . ." (Emphasis added throughout.)

House Bill 952, Special Laws, 46th Leg., R.S. 1939, ch. 84, p. 839, provides:

"Section 1. It shall be unlawful for any person to use, operate, sail, anchor, tie, or moor to the bank any boat, sailboat, motorboat, skiff, barge, raft, or other floating device, or to place any post, piling, obstruction, wire, rope, cable, net or trap, in or upon the waters of any natural or artificial pass which is now or may be hereafter opened, reopened, dredged, excavated, constructed, and maintained by the Game, Fish and Oyster Commission of the State of Texas as a fish pass, between the Gulf of Mexico and any inland bay, within a distance of two thousand, eight hundred (2,800) feet inside of such pass, measured from the mouth of said pass where it empties into or opens upon the Gulf of Mexico."

As to your first question, obviously the application of House Bill 952 to any situation depends on whether the Game, Fish and Oyster Commission has functioned or is functioning in improving the pass concerned. You have advised that the Commission does not so function at Sabine Pass or Sabine Jetty. Such being true, House Bill 952 has no application.

The answer to your second question depends on the extent to which Sabine Jetty and the waters adjacent thereto constitute a part of Sabine Pass and the correct determination of the points from which to measure the prohibited area.

As we understand the factual situation, the Sabine Jetty was formed by the erection of two parallel walls or breakwaters extending some three miles out into the Gulf from each side of the natural mouth of Sabine Pass. It, in effect, extends the pass the length of the jetty into the Gulf.

We are further advised that fish tend to approach the pass for entrance therein from the sides of the jetty, and, upon meeting the obstruction, tend to turn and congregate in one or more spots on the outer side of the jetty where they become peculiarly vulnerable to netting and seining at the location of such "traps."

If "Sabine Pass," referred to in Article 941, does not include the artificially extended channel, the jetty may be ignored in determining the prohibited area. If it includes the extension, the question arises as to what area in addition to the new channel is included in the prohibition.

These questions may be determined by reference to Gibson v. Sterrett, 144 S.W. 1189 (Tex. Civ. App. 1912), and Gavina v. State, 65 Tex. Crim. 572, 145 S.W. 594 (1912). In the Gibson case it was urged that a "pass," as used in Article 941, was a restricted area lying immediately between the islands forming the strait entering Corpus Christi Bay. However, the Court said:

> "The evidence shows clearly that the water from and to the Gulf flows through a defined channel extending from the strait between the islands to Corpus Christi Bay;

**420**

Hon. Ramie H. Griffin, Page 4, (V-1191)

and it is therefore as much a part of the
pass leading from such coast water to the
Gulf as the strait itself. The construc-
tion of the word 'pass' insisted on by ap-
pellant would defeat the evident purpose
of the statute. <u>The purpose the Legisla-
ture had in view was to enable fish to
have free access to and from the coast
waters, and if they are allowed to be
intercepted in or near the channel afore-
said the purpose would be defeated.</u> In
arriving at the sense of the Legislature
in the use of the term 'all passes', the
purpose it had in view must be consulted."

Similarly, the Court in the <u>Gavina</u> case said:

". . . the pass intended by the legis-
lative act was certainly the entire length
of the channel from the bay to the gulf.
About this I think there can be no question.
This question was recently passed on ad-
versely to appellant's contention in the
case of Gibson v. Sterrett, 144 S.W. 1189
. . ."

These cases clearly indicate that the Legisla-
ture intended to protect the free passage of the fish in
or near the channel. It recognized the natural propen-
sities of the fish and endeavored to protect them at
points at which they might be intercepted when seeking
entrance to the pass.

The natural approach to the pass is apparently
the concentration point to which the fish go for entrance.
It would appear to be within the area intended to be pro-
tected. Since the jetty is designed to function as a
part of the pass, and since it appears to definitely in-
fluence the movement of the fish and to create conditions
which gave rise to Article 941, we conclude that an area
within one mile of any part of the original pass or the
jetty is within the area prohibited by Article 941.

SUMMARY

House Bill 952, Special Laws, 46th Leg.,
R.S. 1939, ch. 84, p. 839, is applicable to
the waters of any natural or artificial pass

Hon. Ramie H. Griffin, Page 5, (V-1191)

maintained by the Game, Fish and Oyster Commission as a fish pass, and is not, therefore, presently applicable to Sabine Pass or Sabine Jetty. By the provisions of Article 941, V.P.C., it is illegal to seine with the equipment therein forbidden within one mile of any point on the original Sabine Pass or the Sabine Jetty.

APPROVED:

Ned McDaniel
State Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

Yours very truly,

PRICE DANIEL
Attorney General

By *V.F. Taylor*
V. F. Taylor
Assistant

VFT:jmc